IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| PEERLESS INDEMNITY INSURANCE COMPANY and OHIO SECURITY INSURANCE COMPANY<br><br>*Plaintiffs*,<br><br>v.<br><br>TILMA, INC.<br><br>*Defendant*,<br><br>and<br><br>JANE DOE (A.M.G.)<br><br>*Nominal Defendant*. | Civil Action No. 2:24-cv-492 |

**COMPLAINT FOR DECLARATORY JUDGMENT OF**
**PEERLESS INDEMNITY INSURANCE COMPANY AND**
**OHIO SECURITY INSURANCE COMPANY**

Plaintiffs Peerless Indemnity Insurance Company ("Peerless Indemnity") and Ohio Security Insurance Company ("OSIC"), by counsel, state for their Complaint for Declaratory Judgment against Defendant Tilma, Inc. ("Tilma") and Nominal Defendant Jane Doe (A.M.G.) (the "Underlying Plaintiff") as follows:

## I.    INTRODUCTION

1.    This is an action for declaratory relief and judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Peerless Indemnity and OSIC seek a declaration of their rights and obligations under certain insurance policies issued by Peerless Indemnity and OSIC to Tilma.

2.    The matter that gives rise to Peerless Indemnity and OSIC seeking such declarations is an action filed by the Underlying Plaintiff (the "Underlying Lawsuit") through

which she alleges that she was trafficked for sex at a hotel owned or operated by Tilma and located at 100 Red Cedar Ct., Chesapeake, Virginia, 23320 (the "Underlying Hotel").

3.      In the Underlying Lawsuit, the Underlying Plaintiff alleges that Tilma violated the Trafficking Victims Protection Reauthorization Act ("TVPRA") through its participation in a criminal sex trafficking venture, and through its participation in a venture by continuing to operate the [Underlying Hotel] in a way [Tilma and others] knew or should have known would lead to further violations of 18 U.S.C. § 1591, including the trafficking of [the Underlying Plaintiff]." (*See* Complaint in the Underlying Lawsuit, a copy of which is attached hereto as **Exhibit A** at ¶¶ 155 – 156.)  As a result, the Underlying Plaintiff alleges that Tilma knowingly benefited from its participation in her trafficking at the Underlying Hotel, which, she alleges, Tilma owned, operated, or managed.  Furthermore, the Underlying Plaintiff alleges that Tilma condoned, facilitated, and benefited from the trafficking that occurred at the Underlying Hotel.

4.      Among other relief and declarations, Peerless Indemnity and OSIC seek a declaration that they have no duty to defend or indemnify Tilma against the Underlying Lawsuit because, among other reasons, (i) the Underlying Plaintiff's alleged injuries were not caused by an "occurrence"; (ii) the Underlying Plaintiff's alleged injuries were either expected or intended by Tilma; and (iii) the public policy of the Commonwealth of Virginia prohibits insurance coverage for the Underlying Lawsuit.

5.      The Underlying Plaintiff is a nominal party to this declaratory judgment action. The Underlying Plaintiff has been named solely so that she will be bound by the judgment in this action.  Peerless Indemnity and OSIC seek no relief from the Underlying Plaintiff and, in the event that the Underlying Plaintiff will stipulate and agree to be bound by the judgment entered in this case, Peerless Indemnity and OSIC will dismiss her from this action.

6.      An actual, justiciable controversy exists between Peerless Indemnity and OSIC, on the one hand, and Tilma, on the other, regarding their respective rights, duties, status, and other legal relations and obligations, if any, under the relevant insurance policies.

## II.    PARTIES

7.      Peerless Indemnity is a corporation organized pursuant to the laws of Illinois, which has its principal place of business in the Commonwealth of Massachusetts.

8.      OSIC is a corporation organized pursuant to the laws of New Hampshire, which has its principal place of business in the Commonwealth of Massachusetts.

9.      Upon information and belief, Tilma is Virginia corporation which has a principal place of business at 3345 S. Military Highway, Chesapeake, Virginia 23323.

10.     Upon information and belief, Jane Doe (A.M.G.) is a citizen of the United States of America and a resident of the Commonwealth of Virginia.  Jane Doe (A.M.G.) may be served through her counsel, E. Kyle McNew of MichieHamlett, PLLC.

## III.    JURISDICTION AND VENUE

11.     This is a proceeding for declaratory relief pursuant to Title 28 of the United States Code, § 2201, *et seq*, to determine the scope of the respective rights, duties, and obligations, if any, of Peerless Indemnity and OSIC under contracts of liability insurance with respect to the Underlying Lawsuit, for which Tilma has sought coverage from Peerless Indemnity and OSIC.

12.     This court has jurisdiction over this action under 28 U.S.C. §§ 1332(a) because complete diversity of citizenship exists and the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs.

13.     Venue lies with the Court pursuant to 28 U.S.C. § 1391, as well as pursuant to Local Civil Rule 3(B)(4) of the Rules of the United States District Court for the Eastern District of

Virginia as Tilma is located in this judicial district and this is the judicial district in which a substantial part of the events giving rise to the Underlying Lawsuit are alleged to have occurred.

## IV.    FACTUAL BACKGROUND

### A.    The Underlying Lawsuit

14.    On March 27, 2024, the Underlying Plaintiff filed a lawsuit in the United States District Court for the Eastern District of Virginia, Norfolk Division captioned *Jane Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc., et al.*, Case No. 2:24-cv-00204-JKW-DEM (previously defined as the "Underlying Lawsuit").

15.    The Underlying Plaintiff alleges that, between 2012 and 2014, she was subject to "sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees." (Ex. A, Complaint, ¶¶ 1, 36.)

16.    The Underlying Plaintiff alleges that she was trafficked at the Underlying Hotel between 2012 and 2014 and that Tilma, "at all relevant times…owned, operated, controlled, and/or managed" the Underlying Hotel. (*Id*. at ¶¶ 23, 36.)

17.    The Underlying Plaintiff alleges that Tilma "knew or should have known about the sex trafficking pervasive at [the Underlying Hotel] based upon obvious indicators of" "widespread and pervasive" sex trafficking activity. (*Id*. at ¶¶ 83 – 84.)

18.    The Underlying Plaintiff alleges that Tilma "knew about the widespread and ongoing trafficking at the [Underlying Hotel], including the trafficking of [the Underlying Plaintiff], through the direct observations of hotel staff, including management-level staff." (*Id*. at ¶ 91.)

19.    The Underlying Plaintiff alleges that Tilma and the other defendants "developed a continuous business relationship with [multiple traffickers at the Underlying Hotel] who operated at the hotel on a routine and repetitive basis." (*Id*. at ¶ 89.)

20.     The Underlying Plaintiff alleges that multiple employees, including "management-level employees," at the Underlying Hotel knew that she was being trafficked because they (i) observed the Underlying Plaintiff appearing "emotional, nervous, scared, and often bruised" while "dressed provocatively" and "in the presence of and being monitored by her trafficker"; (ii) observed the Underlying Plaintiff booking rooms for herself and her trafficker; (iii) "put all of the trafficking victims at the end of a back hallway near the door they kept unlocked"; (iv) observed her trafficker repeatedly entering her room; (v) observed heavy foot traffic to and from the Underlying Plaintiff's room by men who were not guests; and (vi) overheard her screaming while her trafficker caught her, dragged her back to her hotel room, and beat her following her attempt to escape her trafficker.  (*Id*. at ¶¶ 98 – 99.)

21.     The Underlying Plaintiff alleges that staff at the Underlying Hotel observed additional "obvious signs" of trafficking at the Underlying Hotel, including: (i) men frequenting her rooms at "unusual hours" and for "brief periods of time"; (ii) her traffickers preventing housekeeping staff from entering the room by placing the "Do Not Disturb" sign on the door; (iii) the presence of sex paraphernalia; and (iv) the presence of multiple other trafficking victims and traffickers at the Underlying Hotel.  (*Id*. at ¶ 98.)

22.     The Underlying Plaintiff contends that Tilma "knew or were willfully blind to the fact that [the Underlying Plaintiff] was being trafficked at the [Underlying Hotel]."  (*Id*. at ¶ 100.)

23.     The Underlying Plaintiff  alleges that Tilma had "constructive knowledge" of her trafficking at the Underlying Hotel because it "was the direct result of the [defendants, including Tilma] facilitating trafficking" at the Underlying Hotel.  (*Id*. at ¶ 102; *see also id*. at ¶ 104.)

24.     The Underlying Plaintiff alleges that Tilma continued to rent rooms to sex traffickers, including rooms used to exploit the Underlying Plaintiff, "[d]espite having actual or constructive knowledge of widespread and ongoing sex trafficking at the [Underlying Hotel]".  (*Id*. at ¶ 106.)

25.     The Underlying Plaintiff alleges that Tilma  "profited from every room rented to a trafficker or for use in trafficking at the [Underlying Hotel]" and Tilma and others "received a financial benefit from participating in a venture" through which "the traffickers were renting the hotel rooms to generate revenue from sex trafficking and [Tilma and others] were generating revenue by renting the hotel rooms."  (*Id*. at ¶¶ 142, 143, 145.)  The Underlying Plaintiff refers to these allegations as concerning "Venture 1."

26.     The Underlying Plaintiff alleges that Tilma and others "participated in [Venture 1] by acting jointly to rent rooms to traffickers and to operate the hotel in a way that attracted business from traffickers and facilitated their trafficking activity."  (*Id*. at ¶ 147.)

27.     The Underlying Plaintiff alleges that Tilma and others provided traffickers "with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption" through "an implicit agreement" which was evidenced by:

    a.     The population of traffickers, including [the Underlying Plaintiff's], were familiar to the staff at the [Underlying Hotel];

    b.     These traffickers reduced their operating burden because they did not need to make significant efforts to conceal their activities from the staff at the [Underlying Hotel] but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff;

    c.     Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring identification from appropriate parties; and

    d.     Defendants provided additional services to traffickers (including [the Underlying Plaintiff's] trafficker), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms.

e.     The staff designated an area of the hotel, in the back of a hallway but near an unlocked door, for traffickers, which facilitated their illegal activities.

(*Id*. at ¶ 149.)

28.     The Underlying Plaintiff alleges that Tilma and others "knowingly received a financial benefit from participating in a commercial hotel-operating venture at the" Underlying Hotel.  (*Id*. at ¶ 152.)  The Underlying Plaintiff refers to these allegations as concerning "Venture 2."

29.     The Underlying Plaintiff asserts that Tilma "violated the TVPRA as a perpetrator by harboring sex trafficking victims as defined by 18 U.S.C. § 1591(a)(1) and by participating in a criminal trafficking venture as defined by 18 U.S.C. § 1591(a)(2)."  (*Id*. at ¶ 155.)

30.     The Underlying Plaintiff alleges that, "[d]espite their actual and constructive knowledge that Venture 2 was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), [Tilma and others] participated in the venture by continuing to operate the [Underlying Hotel] in a way that they knew or should have known would lead to further violations of 18 U.S.C. § 1591, including the trafficking of [the Underlying Plaintiff]."  (*Id*. at ¶ 156.)

31.     In the Underlying Lawsuit, the Underlying Plaintiff asserts the following causes of action against Tilma: (i) Perpetrator Liability under 18 U.S.C. § 1595(a) Based on a Violation of 18 U.S.C. § 1591(a) against Tilma; and (ii) Beneficiary Liability under § 1595(a) of the TVPRA against all defendants, including Tilma.  The Underlying Plaintiff asserts a third cause of action seeking to hold other parties vicariously liability for Tilma's "violations of the TVPRA, both as a perpetrator under 18 U.S.C. § 1591(a) and as a beneficiary under 18 § 1595(a)."  (*Id*. at ¶¶ 196 – 205, 210.)

**B.     The Policies**

32.     Peerless or OSIC issued four commercial package policies to Tilma, Inc. t/a Super 8 Motel or Tilma, Inc. t/a Quality Inn during the during the period when the Underlying Plaintiff alleges that she was trafficked at the Underlying Hotel.

33.     Peerless Indemnity issued Policy No. CBP 5414396 to Tilma, Inc. t/a Super 8 Motel for the policy period of January 30, 2011 to January 30, 2012 ("2011 Policy").  Excerpts of the 2011 Primary Policy are attached hereto as **Exhibit B**.

34.     Peerless Indemnity issued Policy No. CBP 5414396 to Tilma, Inc. t/a Super 8 Motel for the policy period of January 30, 2012 to January 30, 2013 ("2012 Policy").  Excerpts of the 2012 Policy are attached hereto as **Exhibit C**.

35.     By way of an endorsement effective October 22, 2012, the Named Insured to the 2012 Policy was revised to Tilma, Inc. t/a Quality Inn.

36.     Peerless Indemnity issued Policy No. CBP 5414396 to Tilma, Inc. t/a Quality Inn for the policy period of January 30, 2013 to January 30, 2014 ("2013 Policy").  Excerpts of the 2013 Policy are attached hereto as **Exhibit D**.

37.     OSIC issued Policy No. BKS 55809322 to Tilma, Inc. t/a Quality Inn for the policy period of January 30, 2014 to January 30, 2015 ("2014 Policy").  Excerpts of the 2014 Policy are attached hereto as **Exhibit E**.

38.     Peerless Indemnity and OSIC refer to the 2011 Policy, 2012 Policy, 2013 Policy, and 2014 Policy collectively as the "Policies."

39.     The Policies contain two liability coverage parts: (i) Coverage A, Bodily Injury and Property Damage Liability; and (ii) Coverage B, Personal and Advertising Injury Liability.

40.     Each of the Policies contains an Each Occurrence Limit in the amount of $1 million, a Personal and Advertising Injury Limit in the amount of $1 million, and a General Aggregate Limit in the amount of $2 million.  (Exhibit B at PIIC-OSIC 00004; Exhibit C at PIIC-OSIC 00040; Exhibit D at PIIC-OSIC 00075; Exhibit E at PIIC-OSIC 00104.)

41.    The 2014 Policy contains a Non-Cumulation of Limits (Same Occurrence) endorsement which provides that the below is added to Paragraph 5. under Section III – Limits of Insurance:

> Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, general liability policies issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policies because of such "occurrence."

> "For purposes of this endorsement, the term "us" also includes any other company that is or was part of the Liberty Mutual Agency Corporation division of Liberty Mutual Group."

(Exhibit E at PIIC-OSIC 00135.)

## 1.    Coverage A: Bodily Injury and Property Damage Liability

42.    The Insuring Agreement for Coverage A of the Policies provides, in part, as follows:

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)** The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**    This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy
period; and . . .

(Exhibit B at PIIC-OSIC 00012; Exhibit C at PIIC-OSIC 00048; Exhibit D at PIIC-OSIC 00085; Exhibit E at PIIC-OSIC 00117.)

43.     The Policies define "bodily injury" to mean "bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease."  (Exhibit B at PIIC-OSIC 00011; Exhibit C at PIIC-OSIC 00047; Exhibit D at PIIC-OSIC 00084; Exhibit E at PIIC-OSIC 00142.)

44.     The Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Exhibit B at PIIC-OSIC 00025; Exhibit C at PIIC-OSIC 00061; Exhibit D at PIIC-OSIC 00098; Exhibit E at PIIC-OSIC 00132.)

45.     Coverage A to the 2011, 2013, and 2013 Policies contains an Expected or Intended Injury Exclusion, which bars coverage for:

"Bodily injury" or "property damage" expected or intended from the standpoint of
the insured.  This exclusion does not apply to "bodily injury" resulting from the use
of reasonable force to protect persons or property.

(Exhibit B at PIIC-OSIC 00013; Exhibit C at PIIC-OSIC 00049; Exhibit D at PIIC-OSIC 00086.)

46.     Coverage A to the 2014 Policy contains an Expected or Intended Injury Exclusion, which bars coverage for:

"Bodily injury" or "property damage" expected or intended from the standpoint of
the insured.  This exclusion does not apply to "bodily injury" or "property damage"
resulting from the use of reasonable force to protect persons or property.

(Exhibit E at PIIC-OSIC 00143.)

47.     Coverage A to the Policies contain an exclusion for Personal And Advertising Injury which bars coverage for "'[b]odily injury' arising out of 'personal and advertising injury.'"

10

(Exhibit B at PIIC-OSIC 00016; Exhibit C at PIIC-OSIC 00052; Exhibit D at PIIC-OSIC 00089; Exhibit E at PIIC-OSIC 00122.)

### 2.   Coverage B: Personal and Advertising Injury Liability

48.   The Insuring Agreement for Coverage B of the Policies provides, in part, as follows:

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(Exhibit B at PIIC-OSIC 00016-17; Exhibit C at PIIC-OSIC 00052-53; Exhibit D at PIIC-OSIC 00089-90; Exhibit E at PIIC-OSIC 00122.)

49.   The Policies define "personal and advertising injury" to mean injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Exhibit B at PIIC-OSIC 00025; Exhibit C at PIIC-OSIC 00061; Exhibit D at PIIC-OSIC 00098;

Exhibit E at PIIC-OSIC 00132.)

50.    The 2014 Policy includes the following as with respect to the definition of "personal

and advertising injury":

As used in the definition, oral or written publication includes publication of material by someone not authorized to access or distribute that material. This would include publication of material as a result of someone's hacking into your computer network or that part of a web-site that is about your goods, products or services for the purpose of attracting customers or supporters.

(Exhibit E at PIIC-OSIC 00145.)

51.    Coverage B to the Policies contains a Knowing Violation of Rights of Another

Exclusion, which bars coverage for:

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of an-other and would inflict "personal and advertising injury".

(Exhibit B at PIIC-OSIC 00017; Exhibit C at PIIC-OSIC 00053; Exhibit D at PIIC-OSIC 00090;

Exhibit E at PIIC-OSIC 00123.)

52.    Coverage B to the Policies contains a Criminal Acts Exclusion, which bars

coverage for:

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

(Exhibit B at PIIC-OSIC 00017; Exhibit C at PIIC-OSIC 00053; Exhibit D at PIIC-OSIC 00090;

Exhibit E at PIIC-OSIC 00123.)

53.    Coverage B to the Policies contains a Contractual Liability Exclusion which bars

coverage for:

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

(Exhibit B at PIIC-OSIC 00017; Exhibit C at PIIC-OSIC 00053; Exhibit D at PIIC-OSIC 00090; Exhibit E at PIIC-OSIC 00123.)

C.      **Peerless Indemnity and OSIC's Reservation of Rights Under the Policies**

54.     Tilma tendered the Underlying Lawsuit for purposes of defense and indemnity on April 3, 2024.

55.     Peerless Indemnity and OSIC agreed, subject to a reservation of rights, to provide Tilma with a defense against the Underlying Lawsuit on May 28, 2024.

**COUNT I**
**Declaratory Judgment – The Duty to Defend**

56.     Peerless Indemnity and OSIC re-allege and incorporate by reference Paragraphs 1 through 55 as though fully set forth herein.

57.     There is no duty to defend Tilma against the Underlying Lawsuit under the Policies because the Underlying Plaintiff does not allege "bodily injury" caused by an "occurrence."

58.     There is no duty to defend Tilma against the Underlying Lawsuit under the Policies because the Expected and Intended Injury Exclusion bars coverage for the Underlying Plaintiff's alleged "bodily injury" under Coverage A of the Policies.

59.     There is no duty to defend Tilma against the Underlying Lawsuit under the Policies because the Underlying Plaintiff does not allege an offense resulting in a "personal and advertising injury" under Coverage B of the Policies.

60.     There is no duty to defend Tilma against the Underlying Lawsuit under the Policies because the Underlying Plaintiff does not allege "personal and advertising injury" arising out of Tilma's business under Coverage B of the Policies.

61.     To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, there is no duty to defend Tilma on the basis that the Knowing Violation of Rights of Another Exclusion in the Policies bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury" under Coverage B.

62.     To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, there is no duty to defend Tilma on the basis that the Criminal Acts Exclusion in the Policies bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury" under Coverage B.

63.     To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, there is no duty to defend Tilma to the extent that the Contractual Liability Exclusion in the Policies bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury" under Coverage B.

64.     The Policies do not afford coverage to Tilma for the Underlying Lawsuit.

65.     Because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are not obligated to defend Tilma against the Underlying Lawsuit and may withdraw from the defense of Tilma in the Underlying Lawsuit.

66.     Because the Policies do not afford coverage for the Underlying Lawsuit, and Peerless Indemnity and OSIC have no obligation to defend Tilma in the Underlying Lawsuit, Peerless Indemnity and OSIC likewise have no obligation to indemnify Tilma in the Underlying Lawsuit.

67.     Because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are entitled to the reimbursement of the amounts that it has paid in connection with the defense of the Underlying Lawsuit.

## COUNT II
## <u>Declaratory Judgment – The Duty to Indemnify</u>

68.     Peerless Indemnity and OSIC re-allege and incorporate by reference Paragraphs 1 through 67 as though fully set forth herein.

69.     The Policies do not afford coverage under Coverage A for the Underlying Lawsuit to the extent that the Underlying Plaintiff's alleged "bodily injuries" did not occur during the policy period of that particular Policy.

70.     The Policies do not afford coverage under Coverage A for the Underlying Lawsuit because the Underlying Plaintiff does not allege "bodily injury" caused by an "occurrence."

71.     The Policies do not afford coverage under Coverage A for the Underlying Lawsuit because the Expected and Intended Injury Exclusion bars coverage for the Underlying Plaintiff's alleged "bodily injury."

72.     The Policies do not afford coverage under Coverage B for the Underlying Lawsuit because the Underlying Plaintiff does not allege an offense resulting in a "personal and advertising injury" under Coverage B of the Policies.

73.     The Policies do not afford coverage under Coverage B for the Underlying Lawsuit because the Underlying Plaintiff does not allege "personal and advertising injury" arising out of Tilma's business.

74.     To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, the Policies do not afford coverage under Coverage B for the Underlying Lawsuit on the basis that the Knowing Violation of Rights of Another Exclusion bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury."

75.     To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, the Policies do not afford coverage under Coverage B for the

Underlying Lawsuit on the basis that the Criminal Acts Exclusion bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury."

76.    To the extent that the Underlying Plaintiff alleges "personal and advertising injury" in the Underlying Lawsuit, the Policies do not afford coverage under Coverage B for the Underlying Lawsuit to the extent that the Contractual Liability Exclusion bars coverage for the Underlying Plaintiff's alleged "personal and advertising injury."

77.    The Policies do not afford coverage to Tilma for the Underlying Lawsuit.

78.    Because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are not obligated to indemnify Tilma against the Underlying Lawsuit.

79.    Because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are entitled to the reimbursement of the amounts that it has paid in connection with judgments or settlements in connect with the Underlying Lawsuit.

**COUNT III**
**Declaratory Judgment– Public Policy Bars Coverage of the Underlying Lawsuit**

80.    Peerless Indemnity and OSIC re-allege and incorporate by reference Paragraphs 1 through 79 as though fully set forth herein.

81.    Under the TVPRA, it is a felony to knowingly subject an individual to or maintain an individual in sexual servitude.  18 U.S.C. § 1591, *et seq*.

82.    Under the TVPRA, it is a felony to knowingly recruit, entice, harbor, transport, provide, obtain, advertise, maintain, solicit, patronize, or solicit by any means an individual for the purpose of sexual servitude.  *Id*.

83.    Under the TVPRA, it is a felony to knowingly benefit financially or receive anything of value from the sexual servitude of another.  *Id*.

16

84.     In addition to imposing criminal liability, the TVPRA also provides for the imposition of civil liability against violators.  *Id*. at 18 U.S.C.A. § 1595(a).

85.     The TVPRA represents a declaration of public policy that it is a criminal act to participate in, or benefit from, an individual's sexual servitude.

86.     It is against public policy to provide coverage for an insured's criminal acts.

87.     Public policy precludes insuring against liability for the Underlying Plaintiff's allegations.

88.     Because public policy precludes insuring against the allegations in the Underlying Lawsuit, the Policies do not afford coverage to Tilma.

89.     Because public policy precludes coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are not obligated to defend or indemnify Tilma against the Underlying Lawsuit.

90.     Because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC are entitled to the reimbursement of the amounts that they have paid in connection with the defense of the Underlying Lawsuit or settlement or judgments entered in the Underlying Lawsuit.

**COUNT IV**
**Declaratory Judgment– One Occurrence/Non-Cumulation of Limits (Same Occurrence)**

91.     Peerless Indemnity and OSIC re-allege and incorporate by reference Paragraphs 1 through 90 as though fully set forth herein.

92.     To the extent that the Policies afford coverage for the Underlying Plaintiff's allegations concerning the Underlying Hotel, which is disputed, then the Underlying Plaintiff's allegations concerning her alleged "bodily injury" at the Underlying Hotel constitute one "occurrence" under the Policies.

93. To the extent that the Policies afford coverage for the Underlying Plaintiff's allegations concerning the Underlying Hotel, which is disputed, and to the extent that any one "occurrence" causing "bodily injury" occurred during the policy period of the 2014 Policy and the policy period of any of the other Policies, then the 2014 Policy's Each Occurrence Limit must be reduced by the amount of payments made under the other Policies as a result of that "occurrence."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Peerless Indemnity and OSIC respectfully request the following relief:

a. A declaration that, because the Policies do not afford coverage for the Underlying Lawsuit, Peerless Indemnity and OSIC not required to defend Tilma against the Underlying Lawsuit;

b. A declaration that, because Peerless Indemnity and OSIC are not required to defend Tilma against the Underlying Lawsuit, Peerless Indemnity and OSIC may withdraw from the defense of Tilma in the Underlying Lawsuit;

c. A declaration that, because Peerless Indemnity and OSIC are not required to defend Tilma against the Underlying Lawsuit, Peerless Indemnity and OSIC are not required to indemnify Tilma for settlements or judgments in connection with the Underlying Lawsuit;

d. A declaration that, because coverage of the Underlying Lawsuit is barred by public policy, Peerless Indemnity and OSIC are not required to defend or indemnify Tilma against the Underlying Lawsuit;

e. A declaration that, because Peerless Indemnity and OSIC are not required to defend Tilma against the Underlying Lawsuit, Peerless Indemnity and OSIC are entitled to reimbursement of defense costs incurred in defense of Tilma in the Underlying Lawsuit and judgment in an amount to be determined;

f.      A declaration that, to the extent coverage exists (which is disputed), the Underlying

Plaintiff's allegations constitute a single "occurrence" under the Policies; and

g.      Such other and further relief be granted as this Court deems just and proper.

Respectfully submitted,

PEERLESS INDEMNITY INSURANCE
COMPANY AND OHIO SECURITY
INSURANCE COMPANY

By Counsel

**/s/ E. Ford Stephens**
E. Ford Stephens
VSB No. 25959
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Telephone:  804-697-4124
Fax:  (804) 687-6112
Email: estephens@cblaw.com

Nancy D. Adams (*Pro Hac Vice
Forthcoming*)
Alec J. Zadek (*Pro Hac Vice Forthcoming*)
Katherine N. Galle (*Pro Hac Vice
Forthcoming*)
ndadams@mintz.com
azadek@mintz.com
kngalle@mintz.com
MINTZ, LEVIN, COHN,
   FERRIS, GLOVSKY AND POPEO P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone:  617-542-6000

Allison R. Radocha (*Pro Hac Vice
Forthcoming*)
aradocha@mintz.com
MINTZ, LEVIN, COHN,
   FERRIS, GLOVSKY AND POPEO P.C.
919 Third Avenue
New York, New York 10022
Telephone:  212-935-3000