IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| PEERLESS INDEMNITY INSURANCE COMPANY and OHIO SECURITY INSURANCE COMPANY | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| TILMA, INC. | ) ) Case No. 2:24-cv-00492-JKW-RJK |
| *Defendant*, | ) ) |
| and | ) ) |
| JANE DOE (A.M.G.) | ) ) |
| *Nominal Defendant*. | ) |

**OPPOSITION OF
PEERLESS INDEMNITY INSURANCE COMPANY AND
OHIO SECURITY INSURANCE COMPANY
TO MOTION TO DISMISS OF TILMA, INC.
and JOINDER BY JANE DOE (A.M.G.)**

## <u>TABLE OF CONTENTS</u>

I.    Introduction .................................................................................................. 1

II.   Relevant Factual Background ...................................................................... 2

    *A. The Underlying Lawsuit.* ......................................................................... 2

    *B. The Policies.* ............................................................................................ 6

III.  Argument ..................................................................................................... 9

    *A. Because the Policies Do Not Afford Coverage for the Underlying Lawsuit, Peerless States a Viable Legal Claim.* ............................................................................... 10

        1.   The Interpretation of Contracts Under Virginia Law. ................................ 10

        2.   Coverage A, Bodily Injury and Property Damage Liability, Does Not Apply to the Underlying Lawsuit. .................................................................... 12

        3.   Coverage B, Personal and Advertising Injury Liability, Does Not Apply to the Underlying Lawsuit. ................................................................... 17

    *B. It Is Against Public Policy To Provide Coverage For the Underlying Plaintiff's Claims.* ...... 19

    *C. This Court has Subject Matter Jurisdiction over the Coverage Action.* ................................. 22

    *D. This Court Should Not Abstain from Hearing the Coverage Action.* ..................................... 24

IV.   Conclusion ................................................................................................... 26

Now come, Plaintiffs, Peerless Indemnity Insurance Company ("Peerless Indemnity") and Ohio Security Insurance Company ("OSIC") (collectively, "Peerless"), and hereby oppose Defendant, Tilma, Inc.'s ("Tilma"), Motion to Dismiss (ECF Nos. 19, 20), which was adopted by Nominal Defendant, Jane Doe (A.M.G.) (the "Underlying Plaintiff") (ECF No. 24).

## I.  INTRODUCTION

The Underlying Plaintiff alleges that she was beaten, branded, and sold for sex at a hotel owned and operated by Tilma.  Seeking compensation for her alleged injuries, the Underlying Plaintiff asserts claims under 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), against, among others, Tilma, a hotel franchisee.  Broadly, the TVPRA contains both criminal prohibitions (18 U.S.C. § 1591) and a civil remedy for victims to recover money damages (18 U.S.C. § 1595).  Relevant here, the Underlying Plaintiff seeks monetary damages under § 1595 for two types of liability:  perpetrator liability and participant liability.  For perpetrator liability, the Underlying Plaintiff alleges that Tilma is a "perpetrator" of her alleged sex trafficking and, for participant liability, the Underlying Plaintiff alleges a "continuous business relationship" and "implicit understanding" between Tilma and her trafficker.

Although the relevant insurance policies do not afford coverage for the Underlying Plaintiff's allegations, following the preferred path, Peerless agreed to provide a defense to Tilma subject to a reservation of rights to file the present declaratory judgment action (the "Coverage Action").  In response, Tilma now moves to dismiss the Coverage Action on the grounds that (i) Peerless fails to state a viable legal claim; and (ii) this Court lacks subject matter jurisdiction.  As explained below, the Motion to Dismiss lacks merit for several reasons.

First, the Policies do not afford insurance coverage – defense or indemnity – for perpetrator liability or participant liability claims brought under the TVPRA.  As Tilma concedes, there is no coverage for "perpetrator" liability claims because such claims are based upon violation of criminal

1

law.  Thus, the only issue is whether the relevant policies afford insurance coverage for Tilma's liability as a participant in the Underlying Plaintiff's alleged sex trafficking.  Stated simply, they do not.  Tilma tries to avoid this result based upon the existence of a purported claim for "should have known" beneficiary liability.  Such a claim does not exist under the TVPRA and is not alleged in the Underlying Lawsuit.  Rather, the Underlying Plaintiff alleges Tilma exploited her for sex directly as a "perpetrator" of sex trafficking or partnered with her sex trafficker in a continuous business enterprise.  As such, Peerless states a viable legal claim under Fed. R. Civ. P. 12(b)(6).  Second, the Declaratory Judgment Act confers subject matter jurisdiction to this Court for the Coverage Action and, given that Peerless is presently providing a defense, the present coverage dispute is ripe for adjudication.  As such, Tilma's assertion that this Court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) over the Coverage Action lacks merit.  For these reasons and those set forth below, the Motion to Dismiss should be denied.

## II.  RELEVANT FACTUAL BACKGROUND[1/]

### A.  *The Underlying Lawsuit.*

On March 27, 2024, the Underlying Plaintiff filed the lawsuit captioned *Jane Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc., et al.*, Case No. 2:24-cv-00204-JKW-DEM in the United States District Court for the Eastern District of Virginia (the "Underlying Lawsuit").[2/]  Broadly, in the Underlying Lawsuit, the Underlying Plaintiff alleges she was trafficked for sex between 2012 and

---

[1/]    In evaluating a motion to dismiss, facts are gleaned from the complaint, documents attached to the complaint, and documents explicitly incorporated into the complaint by reference.  *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).  The facts do not include, however, Tilma's Answer to the Underlying Lawsuit, which it attached as an exhibit to the Motion to Dismiss and Supporting Memorandum of Law.

[2/]    *See Compl.*, ¶ 14, ECF No. 1, PageID# 4.

2014 at the hotel located at 100 Red Cedar Ct., Chesapeake, Virginia (the " Underlying Hotel").[3/] In the Underlying Lawsuit, the Underlying Plaintiff asserts claims against Tilma and five hotel franchisors (the "Franchisors") under the TVPRA.[4/] With respect to Tilma, the Underlying Plaintiff asserts claims against Tilma under § 1595 of the TVPRA for monetary damages based upon Tilma's alleged (i) perpetrator liability; and (ii) participant liability.[5/]

More specifically, in the Underlying Lawsuit, the Underlying Plaintiff asserts two causes of action against Tilma:  (i) Count I:  Perpetrator Liability under § 1595(a) based on violation of § 1591(a); and (ii) Count II:  Beneficiary Liability under § 1595(a) of the TVPRA.  With respect to Count II, the Underlying Plaintiff asserts this cause of action against the Franchisors and Tilma for participating in two separate and distinct ventures that violated the TVPRA:[6/]

- Venture 1:  Tilma knowingly receiving a financial benefit from participating in a venture, in the "form of a continuous business relationship and implicit understanding" with the Underlying Plaintiff's trafficker.[7/]

- Venture 2:  The Franchisors' business relationship with Tilma, which violated § 1591(a) as a perpetrator.[8/]

Thus, with respect to Tilma, Count I and Count II (Venture 2) are both predicated on Tilma's alleged criminal conduct as a perpetrator of sex trafficking in violation § 1591(a).  Tilma has conceded that there is no coverage – defense or indemnity – for the Underlying Plaintiff's perpetrator liability

---

[3/]  *See id.* at ¶ 16, ECF No. 1, PageID# 4.

[4/]  *Underlying Lawsuit Complaint* ("Ul. Compl."), at ¶¶ 197 – 211, ECF No. 1-1, PageID# 89 – 93.

[5/]  *Compl.,* at ¶ 31, ECF No. 1, PageID# 7.

[6/]  *Ul. Compl.*, at ¶¶ 203 – 04, ECF No. 1-1, PageID# 90 – 91.

[7/]  *Id.* at ¶¶ 143, 203(a), ECF No. 1-1, PageID# 72, 90.

[8/]  *Id.* at ¶¶ 150, 155, 204(b), ECF No. 1-1, PageID# 74, 75, 91.

allegations.[9/]  Thus, only Count II (Venture 1) alleging a "continuous business relationship and implicit understanding" between Tilma and the Underlying Plaintiff's trafficker is relevant for purposes of the Motion to Dismiss.

As factual support for the participant liability claim (Count II (Venture 1)), the Underlying Plaintiff alleges that Tilma, the owner and operator of the Underlying Hotel "developed a continuous business relationship with [multiple traffickers at the Underlying Hotel, including the Underlying Plaintiff's trafficker] who operated at the hotel on a routine and repetitive basis."[10/] The Underlying Plaintiff further alleges that multiple employees, including "management-level employees," knew that she was being trafficked because they, *inter alia*, (i) observed the Underlying Plaintiff appearing "emotional, nervous, scared, and often bruised[]" while "dressed provocatively" and "in the presence of and being monitored by her trafficker;" (ii) observed the Underlying Plaintiff booking rooms for herself and her trafficker; (iii) "put all of the trafficking victims at the end of a back hallway near the door they kept unlocked;" (iv) observed her trafficker repeatedly entering her room; (v) observed heavy foot traffic to and from the Underlying Plaintiff's room by men who were not guests; and (vi) overheard her screaming while her trafficker beat her.[11/]

The Underlying Plaintiff also alleges that Tilma facilitated trafficking at the Underlying Hotel by, *inter alia*, (i) "developing relationships with traffickers, including [the Underlying Plaintiff's] trafficker, and creating an understanding that these traffickers could operate at the hotel without risk of interference;" (ii) continuing to provide rooms, services, and assistance to

---

[9/]   *Mem. in Supp. of Mot. to Dismiss* ("Memo."), at 8, ECF No. 20, PageID# 303.

[10/]  *Ul. Compl.*, at ¶¶ 12, 89, ECF No. 1-1, PageID# 23 – 24, 52.

[11/]  *Id*. at ¶¶ 98 (a), (c), (f), (h), (l), (p), 99, ECF No. 1-1, PageID# 55 – 57.

traffickers in the face of obvious 'red flags' of trafficking of [the Underlying Plaintiff]; (iii) "failing to contact law enforcement despite obvious indicia of criminal activity, including sex trafficking;" (iv) "creating an environment where [the traffickers] did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff;" (v) "providing rooms in a designated area of the property that at the end of a back hallway but next to a door that was kept unlocked, thus both allowing ease of access for 'johns' but also minimizing risks of detection;" and (vi) "accommodating specific requests made by traffickers."[12]

The Underlying Plaintiff further alleges that Tilma also "profited from every room rented to a trafficker or for use in trafficking at the [Underlying Hotel]" and it "received a financial benefit from participating in a venture, in the form of a continuous business relationship and implicit understanding, the population of sex traffickers operating out of the [Underlying Hotel], including [the Underlying Plaintiff's] trafficker."[13]  The Underlying Plaintiff alleges that Tilma provided traffickers "with the cover of a legitimate business as a venue where they could profit from sexual exploitation" through "an implicit agreement" which was evidenced by, *inter alia*, (i) "[t]he population of traffickers, including [the Underlying Plaintiff's, that] were familiar to the staff at the [Underlying Hotel];" (ii) that the traffickers "freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff;" (iii) that Tilma, among others, "provided additional services to traffickers;" and (iv) that Tilma's staff "designated

---

[12]  *Id*. at ¶ 108(a), (b), (e) - (h), ECF No. 1-1, PageID# 58 – 59.

[13]  *Id*. at ¶¶ 142 – 43, ECF No. 1-1, PageID# 72.

an area of the [Underlying Hotel], in the back of a hallway but near an unlocked door, for traffickers, which facilitated their illegal activities."[14/]

**B. *The Policies.***

Peerless issued four commercial package policies to Tilma during the period when the Underlying Plaintiff alleges that she was trafficked at the Underlying Hotel (the "Policies").[15/] Each of the Policies contains commercial general liability coverage with two coverage parts: (i) Coverage A, Bodily Injury and Property Damage Liability; and (ii) Coverage B, Personal and Advertising Injury Liability.[16/]

For Coverage A, Bodily Injury and Property Damage Liability, the Insuring Agreement provides in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .
>
> b. This insurance applies to "bodily injury" … only if:
>
> (1) The "bodily injury" … is caused by an "occurrence"…[17/]

Thus, at a minimum, for Coverage A to apply, the Underlying Plaintiff must allege "bodily injury" caused by an "occurrence". The Policies provide that the term "occurrence" is defined to mean "accident, including continuous or repeated exposure to substantially the same general harmful

---

[14/] *Id.* at ¶ 149(a), (b), (d), (e), ECF No. 1-1, PageID# 73 – 74.

[15/] *Compl.*, at ¶ 32, ECF No. 1, PageID# 7; *see also id.* at ¶¶ 33-37, ECF No. 1, PageID# 8; *Memo.*, at 3, ECF No. 20, PageID# 298.

[16/] *Compl.*, at ¶ 39, ECF No. 1, PageID# 8.

[17/] *Id.* at ¶ 42, ECF No. 1, PageID# 9 – 10.

conditions."[18]  In addition, Coverage A contains an Expected or Intended Injury Exclusion which bars coverage for "bodily injury" that is "expected or intended from the standpoint of the insured . . . ."[19]

For Coverage B, Personal and Advertising Injury Liability, the Insuring Agreement provides in relevant part:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . . [20]

At a minimum, for Coverage B to apply, the Plaintiff must allege a "personal and advertising injury".

The Policies define the term "personal and advertising injury" to mean:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or

---

[18]  *Id.* at ¶ 44, ECF No. 1, PageID# 10.

[19]  *Id.* at ¶¶ 45 – 46, ECF No. 1, PageID# 10.

[20]  *Id.* at ¶ 48, ECF No. 1, PageID# 11.

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement". [21/]

In addition, Coverage B contains the following two exclusions:[22/]

> *Knowing Violation Of Rights Of Another*
>
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury". . . .
>
> *Criminal Acts*
>
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

To the extent either exclusion applies, there would be no coverage under Coverage B for the Underlying Lawsuit.

### C. *The Coverage Action*

On April 3, 2024, Tilma tendered the Underlying Lawsuit to Peerless for purposes of coverage.[23/] On May 28, 2024, Peerless agreed, subject to a reservation of rights, to provide Tilma with a defense against the Underlying Lawsuit.[24/] At that time, Peerless explained that it was reserving its rights to, among other things, file a declaratory judgment action to establish that the Policies do not afford coverage for the Underlying Lawsuit.[25/]

On August 9, 2024, Peerless filed the Coverage Action seeking a declaration that the Policies do not afford coverage to Tilma against the Underlying Lawsuit. For Coverage A, Bodily Injury and Property Damage Liability, Peerless sought declarations that the Policies did not afford coverage because, among other reasons, (i) the Underlying Plaintiff's alleged injuries were not

---

[21/]  *Id.* at ¶¶ 49 – 50, ECF No. 1, PageID# 11 – 12.

[22/]  *Id.* at ¶¶ 51 – 52, ECF No. 1, PageID# 12.

[23/]  *Id.* at ¶ 54, ECF No. 1, PageID# 13.

[24/]  *Id.* at ¶ 55, ECF No. 1, PageID# 13; *see also Memo.*, at 3, ECF No. 20, PageID# 298.

[25/]  *Id.* at ¶ 55, ECF No. 1, PageID# 13.

caused by an "occurrence;" and (ii) the Expected or Intended Injury Exclusion barred coverage.[26]
For Coverage B, Personal and Advertising Injury Liability, Peerless sought declarations that the
Policies did not afford coverage because, among other reasons, (i) the Underlying Plaintiff did not
allege a "personal and advertising injury" against Tilma; (ii) the Knowing Violation of Rights
Exclusion barred coverage; and (iii) the Criminal Acts Exclusion barred coverage.[27]  In addition,
with respect to both Coverage A and Coverage B, Peerless sought a declaration that the Policies
do not afford coverage for Tilma's participation in the Underlying Plaintiff's sex trafficking on
public policy grounds.[28]

## III.  ARGUMENT

Peerless filed the Coverage Action seeking a prompt determination as to its duty to defend
and indemnify the Underlying Lawsuit while, in the interim, providing a defense to Tilma.  This
is an approach the Fourth Circuit has deemed "a commendable path."  *See Mount Vernon Fire Ins.
Co. v. Adamson*, 2010 U.S. Dist. LEXIS 106758, at *14-15 (E.D. Va. Sept. 15, 2010) ("Here,
Mount Vernon 'chose a commendable path, by paying defense costs,' while seeking declaratory
relief to resolve its coverage dispute[.]") (citing *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 212
(4th Cir. 2006)).  After Peerless followed the "commendable path" – and not outright denying
coverage for the Underlying Lawsuit – Tilma moved to dismiss on the grounds that (i) the
Coverage Action fails to state a claim; and (ii) this Court lacks subject matter jurisdiction.  As
explained below, Tilma is incorrect on both fronts.

---

[26]  *Id.* at ¶¶ 57 – 58, 64 – 66, 70 – 71, 77 – 78, ECF No. 1, PageID# 13 – 16.

[27]  *Id.* at ¶¶ 59 – 62, 64 – 66, 72 – 75, 77 – 78, ECF No. 1, PageID# 13 – 16.

[28]  *Id.* at ¶¶ 81 – 90, ECF No. 1, PageID# 16 – 17.

**A.** ***Because the Policies Do Not Afford Coverage for the Underlying Lawsuit, Peerless States a Viable Legal Claim.***

### 1.  The Interpretation of Contracts Under Virginia Law.

In determining whether an insurer has a duty to defend, Virginia courts apply the "Eight Corners Rule," looking only to (1) the language of the policy to determine the scope of coverage, and (2) the allegations in the underlying complaint to determine whether any of the claims are potentially covered by the policy.  *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009) (applying eight corners rule under Virginia law and affirming district court's decision that the insurance policy did not afford coverage for underlying claims); *see also Nationwide Mut. Ins. Co. v. Raiford*, No. 3:16cv340, 2017 U.S. Dist. LEXIS 17466, at *6 (E.D. Va. Feb. 7, 2017) (internal quotation marks omitted) (applying eight corners rule and holding that insurer had no duty to defend underlying action "because no combination of facts alleged [therein] would, if proven, fall within the risk covered by the policy"); *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012).  General principles of contract construction apply; when insurance contract terms are clear and unambiguous, Virginia courts construe the contract according to its "plain and ordinary meaning."  *See Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 792 (E.D. Va. 2001); *TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012).[29/]  The application of the eight corners rule requires that the Court compare the four corners of the Underlying Lawsuit against the four corners of the Policies; Tilma's Answer to the Underlying Lawsuit or any affirmative defenses asserted therein is not relevant to the analysis.

---

[29/]  A term is not ambiguous simply because it is not defined in the Policy, or "simply because parties disagree about the meaning," nor "simply because courts have reached different conclusions as to its definition. . . . This does not mean that the word itself does not carry a plain and ordinary meaning."  *See Solers, Inc. v. Hartford Cas. Ins. Co.*, 146 F. Supp. 2d 785, 792-93 (E.D. Va. 2001).

The policyholder bears the initial burden of proving that the claims alleged fall within the scope of coverage in the insurance policy. *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015) (applying Virginia law); *Erie Ins. Exch. v. Salvi*, 86 Va. Cir. 132, 133-34 (2013) (citing *Md. Cas. Co. v. Cole*, 158 S.E. 873, 876 (Va. 1931)). It is only after coverage has been established that the burden shifts to the insurer to prove that any exclusions to coverage apply. *Liberty Univ.*, 792 F.3d at 529; *Salvi*, 86 Va. Cir. at 133-34. If "it appears clearly that the insurer would not be liable under its contract for any judgment based upon the allegations," then the insurer has no duty to defend or indemnify. *AES*, 725 S.E.2d at 535-36; *see also Liberty Univ., Inc.*, 792 F.3d at 528 (quoting *AES,* 725 S.E.2d at 535). Moreover, given that an insurer's obligation to defend is broader than its duty to indemnify, when "there is no duty to defend, there can be no duty to indemnify." *Covington Specialty. Ins. Co. v. Omega Rest. & Bar, LLC*, 666 F. Supp. 3d 528, 547 (E.D. Va. 2023) (citing *Builders Mut. Ins. Co. v. Futura Group, LLC*, 779 F. Supp. 2d 529, 534 (E.D. Va. 2011)).

Applying the "Eight Corners Rule" here, whether Peerless has a duty to defend Tilma turns on comparing the language of the Policies with the allegations in the Underlying Lawsuit. Accordingly, under Virginia law, the question of whether Peerless has a duty to defend does "not require the district court to resolve factual questions at all. [Rather it] need only decide such coverage by comparing what [the plaintiff in the Underlying Lawsuit has] alleged . . . with the language of the insurance policy." *Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, LLC*, 35 F. Supp. 3d 765, 769 (E.D. Va. 2014) (quoting *Penn-Am. Ins. Co. v. Coffey*, 368 F. 3d 409, 413 (4th Cir. 2004)), *aff'd by* No. 14-1944, 644 F. App'x 245 (4th Cir. Apr. 11, 2016).

2.    <u>**Coverage A, Bodily Injury and Property Damage Liability, Does Not Apply to the Underlying Lawsuit.**</u>

For Coverage A to apply, at a minimum, the Underlying Plaintiff must allege "bodily injury" caused by an "occurrence". The Policies define "occurrence" to mean, in relevant part, an "accident."[30/] Though the Policies do not define the term "accident," Virginia courts have long held that the "terms 'occurrence' and 'accident' are synonymous" and "refer to an incident that was unexpected from the viewpoint of the insured." *See AES*, 725 S.E.2d at 536 (citing *Utica Mut. Ins. Co. v. Travelers Indem. Co.*, 286 S.E.2d 225, 226 (Va. 1982)). The Virginia Supreme Court has further held that "an 'accident' is commonly understood to mean an event which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated." *Id.* (internal quotations omitted).

Intentional, criminal conduct is not an "occurrence" or accident under either Virginia law or the plain meaning of the Policies. *See, e.g.*, *USAA Gen. Indem. Co. v. Ellison*, 2023 U.S. Dist. LEXIS 217068, *6-7 (W.D. Va. Dec. 6, 2023) (no coverage available for intentional criminal assault and battery perpetrated by the insured); *Travelers Home & Marine Ins. Co. v. Lander*, 422 F. Supp. 3d 1096, 1103-04 (W.D. Va. 2019) (similar). As noted above, Tilma concedes – as it must – that "Peerless would have no duty [to defend] with respect to" claims which meet the standard for perpetrator liability" (Count I or Count II (Venture 2)).[31/] Because the Underlying Plaintiff's "perpetrator" liability claims do not constitute an "occurrence", the Policies do not afford coverage – defense or indemnity – to Tilma for Count I or Count II (Venture 2).

---

[30/]    *Compl.*, at ¶ 44, ECF No. 1, PageID# 10.

[31/]    *See Memo.*, at 8, ECF No. 20, PageID# 303.

Turning to Count II (Venture 1), the Underlying Plaintiff's participant liability claims likewise fail to allege an "occurrence" under the Policies.[32/]  More specifically, as the Seventh Circuit Court of Appeals has explained,

> Under a theory of participant liability, a plaintiff [], who is the victim of a criminal violation must allege and ultimately prove that (1) a venture has engaged in an act in violation of Section 1591, (2) the defendant knew or should have known that the venture had violated Section 1591, (3) the defendant participated in that venture, and (4) the defendant knowingly benefited from its participation.

*G.G. v. Salesforce.Com, Inc.,* 76 F.4th 544, 553 (7th Cir. 2023); s*ee also Doe v. Red Roof Inns, Inc.,* 21 F.4th 714, 726 (11th Cir. 2021).  In *G.G.,* interpreting the meaning of "participation", the Seven Circuit explained that, "[w]e read 'participation' in accord with our 'ordinary understanding of culpable assistance to a wrongdoer,' which requires only 'a desire to promote the wrongful venture's success[.]'"  *See* 76 F.4th at 559 (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).  The Seventh Circuit further explained that under § 1595(a), a plaintiff "may sufficiently allege such 'culpable assistance' by showing 'a continuous business relationship' between the participant and the trafficker."  *Id.*  "Where the participant provides assistance, support, or facilitation to the trafficker through such a 'continuous business relationship,' a court or jury may infer that the participant and trafficker have a 'tacit agreement' that is sufficient for 'participation' under Section 1595."  *Id.* (citing *M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)).

Consistent with *G.G.,* the Eleventh Circuit has held that "participation" requires a plaintiff to allege that the defendant "took part in" a "common undertaking or enterprise involving risk and

---

[32/]  In its Memorandum in Support of its Motion to Dismiss, Tilma characterizes this claim as the "should have known beneficiary" claim.  (*See Memo.,* at 8, ECF No. 20, PageID# 303.)  This characterization is not consistent with the elements of participation liability.

potential reward."[33]  *See Red Roof*, 21 F.4th at 725.  Applying this definition to allegations of sex trafficking at a hotel, the Eleventh Circuit concluded that the plaintiff had failed to state a claim against the defendant (a hotel franchisor) where the plaintiff had alleged only that the franchisor "sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" but did not otherwise allege that the franchisor "took part in the common undertaking of sex trafficking."  *Id.* at 727.  "Observing something," said the Eleventh Circuit, "is not the same as participating in it."  *See id.*  More recently, in *K.H. v. Riti, Inc.*, No. 23-11682, 2024 U.S. App. LEXIS 3127, at *10 (11th Cir. Feb. 9, 2024), the Eleventh Circuit explained, "[b]ut as we made clear in *Red Roof*, allegations of financial benefit alone are not sufficient to establish that the defendant participated in a sex trafficking venture[.]"  (internal quotations omitted)).  Notably, before *Red Roof* and *G.G.*, the District Court for the Eastern District of Virginia (Wright Allen, J.) adopted and applied a definition of "participation in a venture" that essentially combined the approaches subsequently taken by both the Eleventh and Seventh Circuits.  *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *6-8 (E.D. Va. July 22, 2020) (explaining that "although a hotel does not directly or knowingly participate in sex trafficking by repeatedly renting rooms to a sex trafficking venture, it nevertheless assists, furthers, and facilitates the sex trafficking activity by doing so. Therefore, a plaintiff may sufficiently allege participation in a venture under § 1595 by alleging that the defendant repeatedly rented rooms to people it knew or should have known were using those rooms to engage in sex trafficking.")

---

[33]  Although Peerless disagrees with Tilma's interpretation of the *G.G. v. Salesforce.Com, Inc.,* 76 F.4th 544 (7th Cir. 2023) and *Doe v. Red Roof Inns, Inc.,* 21 F.4th 714 (11th Cir. 2021) decisions, notably, Tilma views both decisions as instructive on this issue.

Without citing any legal authority, Tilma asserts that, to plead a viable participant liability claim under § 1595, the Underlying Plaintiff only needs to demonstrate that Tilma "should have known" that her traffickers were violating the TVPRA.[34/]  Tilma also asserts that § 1595 does not require that Tilma knew, intended, or expected that the Underlying Plaintiff was being trafficked.[35/] Not only are Tilma's assertions wrong but they fail to sustain their burden of proving that the claims fall within the scope of Coverage A.

To prevail on the participant liability claim, the Underlying Plaintiff alleges, as she must, that Tilma engaged in a "continuous business relationship" with the trafficker.[36/]  By showing a "continuous business relationship", the Underlying Plaintiff alleges "culpable assistance" to the trafficker.  *G.G.,* 76 F.4th at 559.  Stated differently, the Underlying Plaintiff alleges that, in furtherance of a "continuous business relationship", Tilma provided assistance, support and facilitation to the trafficker.  The Underlying Plaintiff further alleges that Tilma knowingly received a financial benefit through its "common undertaking or enterprise involving risk and potential profit."[37/]  *Id.* at 562.  The injuries the Underlying Plaintiff is alleged to have suffered as a result of Tilma having facilitated her trafficker through such a "continuous business relationship" are by any measure the natural, probable consequences of Tilma's acts.  *See AES*, 725 S.E.2d at 536 (citing *Resource Bankshares*, 407 F.3d at 637) (an injury is not an accident if it is the "natural or probable consequence" of the insured's intentional act).  As such, Tilma's alleged conduct which gives rise to participant liability is fundamentally incompatible with an "occurrence" or accident under Virginia law.

---

[34/]  *See Memo.*, at 7, ECF No. 20, PageID# 302.

[35/]  *See id.* at 8, ECF No. 20, PageID# 303.

[36/]  *See Ul. Compl.*, at ¶ 89, ECF No. 1-1, PageID# 52.

[37/]  *See id.* at ¶¶ 143 – 45, ECF No. 1-1, PageID# 72 – 73.

Moreover, even if Tilma satisfies its burden to demonstrate that the Underlying Plaintiff's participant liability claim alleges an "occurrence", which it does not, coverage would be barred by the Expected or Intended Exclusion which expressly bars coverage for, in relevant part, "bodily injury" that is "expected or intended from the standpoint of the insured."[38] Thus, the Expected or Intended Exclusion applies to bar coverage both for intentional conduct but also where, as here, an insured, reasonably expected the Underlying Plaintiff's alleged injuries. *See generally, State Farm Fire & Cas. Co. v. Kessel*, 2018 U.S. Dist. LEXIS 231656, *17-18 (E.D. Va. June 28, 2018) ("Intentional acts by the insured are routinely considered to be either expected or intended" and collecting case law); *Hotel Roanoke Conf. Ctr. Comm'n v. Cincinnati Ins. Co.*, 119 Fed. Appx. 451, 454 (4th Cir. 2005); *AES*, 725 S.E.2d at 536; *Liberty Univ.*, 792 F.3d at 525, 530, 533. Again, the Underlying Plaintiff alleges, as she must, a "continuous business relationship" with the trafficker such that there is a "tacit agreement" between Tilma and her trafficker and other traffickers such that Tilma is providing assistance, support, and facilitation to the trafficker.[39]

By way of example, the Underlying Plaintiff alleges that (i) Tilma "developed a continuous business relationship with this population of traffickers who operated at the hotel on a routine and repetitive basis;" (ii) it "create[ed] an environment where [the traffickers] did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff;" (iii) Tilma "provid[ed] rooms in a designated area of the property at the end of a back hallway but next to a door that was kept unlocked, thus both allowing ease of access for 'johns' but also minimizing risks of detection;" (iv) Tilma's staff "designated an area of the [Underlying Hotel], in the back of a hallway but near an unlocked door,

---

[38]  *See Compl.*, ¶ 45, ECF No. 1, PageID# 10.

[39]  *See Ul. Compl.*, at ¶¶ 89, 143 – 44, 203, ECF No. 1-1, PageID# 52, 72 – 73, 90 – 91.

for traffickers, which facilitated their illegal activities;" (v) it "accommodate[ed] specific requests made by traffickers" and "provided additional services to traffickers;" and (vi) the traffickers "freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff."[40/]  Because the Underlying Plaintiff's claims for participant liability are based upon allegations that Tilma had a continuous business relationship with her trafficker, and because the injuries the Underlying Plaintiff is alleged to have suffered as a result of that business relationship are by any measure the natural, probable consequences of Tilma's acts, the Underlying Plaintiff's alleged "bodily injury" was, at a minimum, expected by Tilma.  As such, the Expected or Intended Injury Exclusion bars coverage for the Underlying Lawsuit.

### 3.    Coverage B, Personal and Advertising Injury Liability, Does Not Apply to the Underlying Lawsuit.

For Coverage B to apply, at a minimum, the Underlying Plaintiff must allege a "personal and advertising injury" with respect to Tilma.  The Policies define the term "personal and advertising injury" to mean the following:

> injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> a.  False arrest, detention or imprisonment;
> b.  Malicious prosecution;
> c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d.  Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e.  Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f.  The use of another's advertising idea in your "advertisement"; or
> g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement". [41/]

---

[40/]  *Ul. Compl.*, ¶¶ 89, 98, 108, ECF No. 1-1, PageID# 52, 55 – 56, 58 – 59.

[41/]  *Compl.*, at ¶ 49, ECF No. 1, PageID# 11.

In the Underlying Lawsuit, the Underlying Plaintiff does not allege an offense under Paragraphs (a) through (g) above. In an attempt to create coverage where none exists, Tilma asserts that the Underlying Plaintiff alleges a "personal and advertising injury" because she alleges injury "arising out of … publication, in any manner, of material that violates a person's right of privacy [or] publication of material by someone not authorized to access or distribute that material."[42] Notably, there is no reference whatsoever – because it does not exist – to the Underlying Plaintiff alleging a violation of her right to privacy or publication of material. Instead, Tilma attempts to transform the Underlying Plaintiff's sex trafficking claims under § 1595 into violation of privacy claims, stating in a conclusory fashion that "[b]y trafficking her, they must not have had her permission to distribute her contact information or likeness. Rights of privacy are protean, but sex trafficking is undoubtedly a violation."[43] There is no factual or legal basis to support such a conclusion.

Next, Tilma argues the Knowing Violation of Rights of Another Exclusion is inapplicable based upon the existence of a purported claim for "should have known" beneficiary liability.[44] That claim does not exist under the TVPRA and is not alleged in the Underlying Lawsuit. Rather, the Underlying Plaintiff alleges Tilma exploited her for sex directly as a "perpetrator" of sex trafficking or partnered with her sex trafficker (and other sex traffickers) in a continuous business enterprise. *See A.D.*, 2020 U.S. Dist. LEXIS 250759 at *6-8; *see also G.G.*, 76 F.4th at 560-64; *Red Roof*, 21 F.4th at 725-27. To the extent the Underlying Plaintiff alleges a "personal and

---

[42] *Memo.*, at 9, ECF No. 20, PageID# 304.

[43] *See id.* at 10, ECF No. 20, PageID # 305.

[44] *See id.* at 9, ECF No. 20, PageID # 304.

advertising injury," coverage for any such injury is barred by the Knowing Violation of Rights of Another Exclusion.

**B.** ***It Is Against Public Policy To Provide Coverage For the Underlying Plaintiff's Claims.***

It is axiomatic in the insurance context that public policy generally bars coverage for an insured's intentional wrongdoing or criminal misconduct. *See Atlantic Permanent Fed. Sav. & Loan Ass'n v. American Casualty Co. of Reading, Pa.*, 839 F.2d 212, 217 (4th Cir. 1988) (noting that it is against the public policy of Virginia to provide insurance coverage "where the insured acted with the specific intent to cause harm"). Thus, public policy works to, separately from the terms of the Policies, bar coverage for the Underlying Lawsuit because there can be no duty to defend or indemnify against actions arising out of Tilma's alleged conduct related to sex trafficking. Nevertheless, Tilma claims that "[t]here is no explicit or implicit federal public policy prohibiting Peerless from insuring against Jane Doe's lawsuit and Virginia's public policy endorses the Policy terms."[45/] Tilma's argument lacks merit.

Courts may refuse to enforce a contract as written where enforcement would contravene public policy. *See Adorn Barber & Beauty LLC v. Twin City Fire Ins. Co.*, No. 3:20CV418, 2021 U.S. Dist. LEXIS 200344, at *9 (E.D. Va. Oct. 18, 2021) (citing *Blue Cross & Blue Shield v. Keller*, 248 Va. 618, 626 (1994) (explaining that courts "must adhere to the terms of a contract of insurance as written, if they are plain and clear and not in violation of law or inconsistent with public policy").

Moreover, other courts have held that public policy prohibits insurance coverage for similar allegations of sex trafficking. *Samsung Fire & Marine Ins. Co., Ltd. v. UFVS Mgmt. Co., LLC*, 2023 U.S. Dist. LEXIS 46508, at *23 (E.D. Pa. March 20, 2023), appeal pending, No. 23-1988.

---

[45/] *See id.* at 10, ECF No. 20, PageID# 305.

Specifically, in *UFVS Mgmt. Co.,* the underlying complaints alleged numerous "open and obvious" signs of sex trafficking. *Id.* Those signs included, but were not limited to:

> (1) rooms littered with used condoms; (2) men loitering outside of the hotel rooms; (3) rooms paid for in cash; (4) frequent refusal of housekeeping; (5) aggression directed at the young victims . . . in public spaces; (6) young victims . . . wearing sexually explicit clothing; (7) different men entering and existing the hotel rooms; and (8) young victims . . . exhibiting fear and anxiety in public spaces.

*Id.* at *26. The court, in light of these allegations, found that the "Policyholders knowingly benefitted from acts *facilitating the trafficking scheme* by renting rooms to traffickers despite *overwhelming evidence of the trafficking scheme.*" *Id.* at *27 (emphasis added). The court went on to say:

> at the very least, Policyholders looked the other way and feigned ignorance when confronted with clear indicia of sex trafficking. Indeed, the underlying facts alleged leave no question that the Policyholders *harbored the underlying plaintiffs in reckless disregard of the sex trafficking that would result.* Plainly, Policyholders' continued business dealings with traffickers and harboring of underlying plaintiffs represent a gross deviation from the standard of conduct that a reasonable person would observe in a similar situation. Accordingly, the Court is convinced that the factual allegations contained in the . . . complaints implicate Policyholders' conduct that is criminalized under the Pennsylvania Human Trafficking Law and repugnant to Pennsylvania public policy.

*Id.* (emphasis added).

Much like *UFVS Mgmt. Co.*, the allegations in the Underlying Lawsuit establish that Tilma harbored the Underlying Plaintiff despite open and obvious signs that sex trafficking would result and, despite the duty owed to the Underlying Plaintiff, the Underlying Hotel "gross[ly] deviated from the standard of conduct that a reasonable person would observe in a similar situation." *Id.* As such, "shielding [Tilma] from the consequences of [its] criminal conduct would be against the safety, morals, and welfare of the [the State of Virginia,]" and, thus, "public policy bars coverage and [Peerless does] not have a duty to defend or indemnify" Tilma in the Underlying Lawsuit. *Id.*

at \*27-28; *see also Nautilus Ins. Co. v. Motel Mgmt. Servs., Inc.*, 320 F. Supp. 3d 636, 643 (E.D. Pa. 2018) (finding both that "public policy precludes coverage" because it is against public policy to insure against criminal acts and that it is against public policy to insure against civil actions premised on criminal acts); *Nautilus Ins. Co. v. Motel Mgmt. Servs.*, 2021 U.S. Dist. LEXIS 139386, at \* 13 n. 4 (E.D. Pa. July 27, 2021) (concluding that the amended complaint still seeks damages for facilitating illegal conduct and "[t]he finding of no coverage due to Pennsylvania public policy also continues to apply. The provision of insurance for damages assessed as a result of evil or illegal conduct is against the public policy of [Pennsylvania]") (internal quotations omitted); *Nautilus Ins. Co. v. Motel Mgmt. Servs.*, 2021 U.S. Dist. LEXIS 170748, at \*8, n. 31 (E.D. Pa. Sept. 9, 2021) (explaining that in a nearly identical underlying complaint to the first two *Nautilus* cases, "insurance coverage would be against public policy").  Here, it would violate public policy to require Peerless to continue to defend and to indemnify Tilma against the Underlying Plaintiff's allegations that Tilma perpetrated, participated in, and benefited from (*i.e.*, her sex trafficking).

Next, to the extent that Tilma cites Va. Code Ann. § 38.2-227 in support of the proposition that Virginia encourages insurance coverage for punitive damages, this reliance is misplaced. Section 38.2-227 explicitly states that it is not against the public policy of the Commonwealth of Virginia for any person to purchase insurance providing coverage for punitive damages arising out of the death or injury of any person as the result of negligence, including willful and wanton negligence, *but excluding intentional acts.*  Va. Code Ann. § 38.2-227 (emphasis added).  Whether a person may purchase coverage for punitive damages has no bearing whatsoever on whether the public policy of Virginia prohibits insuring Tilma against its participation in the Underlying Plaintiff's sex trafficking.

C.  *This Court has Subject Matter Jurisdiction over the Coverage Action.*

Tilma argues that this Court lacks subject matter jurisdiction because "Peerless' injury is speculative," and, thus, Peerless has failed to plead sufficient facts to establish "that an actual case or controversy exists between the parties."[46/]  As a result, Tilma contends the Coverage Action is not ripe for adjudication.[47/]  To the contrary, not only are Peerless's claims with respect to the duty to defend cognizable, Peerless has established it has no duty to defend Tilma in the Underlying Lawsuit.  As a result, Peerless disputes the foundational premise of Tilma's arguments concerning its "remaining duties", which Peerless takes to refer to the duty to indemnify.

The ripeness doctrine presents a threshold question of justiciability as it addresses subject matter jurisdiction.  *Scoggins v. Lee's Crossing Homeowner's Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (internal citations and quotations omitted).  If a matter is not "ripe," it is not a justiciable "case or controversy."  *Id*.  Under the Declaratory Judgment Act, a court, "[i]n a case of actual controversy within its jurisdiction[,] . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"  28 U.S.C. § 2201(a).  Thus, a federal court has subject matter jurisdiction to issue a declaratory judgment if three requirements are met: (1) the complaint alleges a justiciable Article III case or controversy; (2) the court possesses an independent basis for jurisdiction over the parties (*e.g.*, federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.  *See Volvo Constr. Equip. N. America, Inc. v. CLM Equip. Co. Inc.*, 386 F.3d 581, 592 (4th Cir. 2004).  Here, Tilma claims that Peerless

---

[46/]  *Memo.*, at 11, 13, ECF No. 20, PageID# 306, 308.

[47/]  *Id*. at 13, ECF No. 20, PageID# 308.

has failed to satisfy the first requirement of subject matter jurisdiction in that it has failed to allege a justiciable Article III "case or controversy."[48]

To satisfy the case-or-controversy requirement in a declaratory judgment action, the facts alleged must show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The ripeness doctrine "determines when a case or controversy is fit for federal judicial review." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 199 (4th Cir. 2019). Claims for declaratory relief are only ripe for judicial resolution when the "facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Hanover Ins. Co. v. C. David Venture Mgmt., LLC*, No. 1:21-cv-790, 2022 U.S. Dist. LEXIS 156834, at *9 (E.D. Va. Aug. 30, 2022) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). Here, the exercise of jurisdiction over the Coverage Action is both appropriate and necessary to efficiently and expeditiously resolve the dispute concerning the question of whether Peerless must defend and indemnify Tilma in the Underlying Lawsuit.

Tilma incorrectly assumes that the only issue before the Court is whether Peerless owes a duty to indemnify Tilma, which "relies on litigated facts."[49] *CACI*, 566 F.3d at 155. That is not the situation, however, and the Fourth Circuit has provided guidance when Courts are presented with a justiciability argument regarding the duty to defend and the duty to indemnify. Specifically, the Fourth Circuit explained that when a "case is filed and an insured claims a defense, that claim— the duty to defend claim—becomes a concrete question, ripe for resolution." *Liberty Mut. Fire Ins.*

---

[48] *Id.* at 13, ECF No. 20, PageID# 308.

[49] *Id.* at 12, ECF No. 20, PageID# 307.

*Co. v. Sutton* 2022 U.S. App. LEXIS 29029, at *5 (4th Cir. Oct. 19, 2022). The Fourth Circuit acknowledged that a party's duty to indemnify claim may "ripen[] along with its duty-to-defend claim" under certain circumstances. *Id.* Where, as here, the relevant state's law provides that a finding of no duty-to-defend precludes a finding of a duty-to-indemnify, then the latter claim ripens along with the former. *See id.* Here, as in *Sutton*, there are both duty-to-indemnify and duty-to-defend claims.[50/] Accordingly, not only is the duty to defend issue ripe for adjudication, but the duty to indemnify issue is ripe when paired with the duty to defend, thereby permitting adjudication of the duty to indemnify issue. *See Reisen v. Aetna Life & Cas. Co.*, 302 S.E.2d 529, 533-34 (Va. 1983).

    **D.** ***This Court Should Not Abstain from Hearing the Coverage Action.***

In a final attempt to persuade the Court to grant its Motion to Dismiss, Tilma urges this Court to abstain from entertaining the Coverage Action due to "the speculative nature of the injury to Peerless, the risk of competing interpretations of the TVPRA's beneficiary liability for the same set of facts, and its attendant, duplicative discovery burdens[.]"[51/] Tilma is incorrect on all three fronts. First, as discussed above, the injury to Peerless is not speculative. "Once a state court case is filed and an insured claims a defense, that claim — the duty-to-defend claim — becomes a concrete question, ripe for resolution by a federal court." *Sutton*, 2022 U.S. App. LEXIS 29029, at *11 (citing *Trustgard*, 942 F.3d at 200). And, if the Court concludes that there is no duty to defend, Peerless would be permitted to withdraw from the defense the Underlying Lawsuit. Further, where there is no duty to defend, there is no duty to indemnify and, thus, a duty to

---

[50/]  *See Compl.*, ¶¶ 56-79, ECF No. 1, PageID# 13 – 16.

[51/]  *Memo.*, at 14, ECF No. 20, PageID# 309.

indemnify claim ripens along with its duty to defend claim.  *Trustgard*, 942 F.3d at 200.  As such, Peerless's requests for relief present concrete questions for the Court's resolution.

Second, there is no risk of competing or conflicting findings.  In the Coverage Action, Peerless is seeking a ruling on the duty to defend – comparing the allegations of the Underlying Lawsuit with the terms of the Policies.  In this action, Peerless is not seeking the Court to make factual findings; rather, Peerless is requesting that the Court conduct an Eight Corners Analysis to determine whether (or not) Peerless has a duty to defend.  For this reason, this is not, as Tilma suggests, "a race for *res judicata*."[52]

Third, to the extent that Tilma has argued in favor of abstention, which is unclear, Tilma has not demonstrated that abstention is appropriate.  As a preliminary matter, abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) or *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), permits a federal court to stay or dismiss an action on the sole ground that there is a similar action pending in state court in which the controversy between the parties can be resolved.  That ground does not exist here.

If the sole relief sought in the complaint is a declaratory judgment brought under the Declaratory Judgment Act, *Brillhart/Wilton* applies.  *See vonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015).  If the complaint is comprised of mixed claims — *i.e.*, claims seeking both declaratory and nondeclaratory relief —*Colorado River* applies.  *Id.*  Because Peerless seeks both declaratory and non-declaratory relief in the form of a judgment for reimbursement of the amounts

---

[52] *See  id.* at 15, ECF No. 20, PageID# 310.

that it has paid in connection with the defense of the Underlying Lawsuit,[53/] the *Colorado River* doctrine governs this matter.

Two conditions must be present for a court to decline jurisdiction pursuant to *Colorado River*. First, "there must be parallel proceedings in state and federal court." *Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991). Second, "'exceptional circumstances' warranting abstention must exist." *Gannett*, 286 F.3d at 741. Here, there is no parallel state action, and, thus, the threshold requirement has not been met and abstention under *Colorado River* is improper.

## IV. CONCLUSION

For the reasons articulated above, Peerless respectfully requests that the Court deny Tilma's Motion to Dismiss and, to the extent appropriate, the Underlying Plaintiff's Notice of Adoption.

---

[53/] S*ee Compl.*, Prayer for Relief (e), ECF No. 1, PageID# 18.

Respectfully submitted,

PEERLESS INDEMNITY INSURANCE
COMPANY AND OHIO SECURITY
INSURANCE COMPANY

By Counsel

*/s/ E. Ford Stephens*
E. Ford Stephens
VSB No. 25959
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Telephone:  804-697-4124
Fax:  (804) 687-6112
Email: estephens@cblaw.com

Nancy D. Adams (*Pro Hac Vice*)
Alec J. Zadek (*Pro Hac Vice*)
Katherine N. Galle (*Pro Hac Vice Forthcoming*)
ndadams@mintz.com
azadek@mintz.com
kngalle@mintz.com
MINTZ, LEVIN, COHN,
   FERRIS, GLOVSKY AND POPEO P.C.
One Financial Center
Boston, Massachusetts 02111
Telephone:  617-542-6000

Allison R. Radocha (*Pro Hac Vice*)
aradocha@mintz.com
MINTZ, LEVIN, COHN,
   FERRIS, GLOVSKY AND POPEO P.C.
919 Third Avenue
New York, New York 10022
Telephone:  212-935-3000

Counsel for Plaintiffs, Peerless Indemnity
Insurance Company and Ohio Security Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send Notice of Electronic Filing (NEF) to the following:

Mr. Patrick H. O'Donnell
Ms. Sharon K. Reyes
Mr. Christopher M. Seelie
KAUFMAN & CANOLES, P.C.
150 W. Main Street, suite 2100
Norfolk, VA 23510

Mr. E. Kyle McNew
MICHIEHAMLETT, PLLC
310 4th Street NE
P.O. Box 298
Charlottesville, Virginia 22902

/s/ E. Ford Stephens
E. Ford Stephens
VSB No. 25959
CHRISTIAN & BARTON, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
Telephone:  804-697-4124
Fax:  (804) 687-6112
Email: estephens@cblaw.com