IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

PEERLESS INDEMNITY INSURANCE
COMPANY, *et al.*,

    Plaintiffs,

    v.

TILMA, INC., *et al.*,

    Defendants.

Case No. 2:24-cv-492

## OPINION & ORDER

Defendant Tilma, Inc. seeks dismissal of claims that Plaintiffs Peerless Indemnity Insurance Company and Ohio Security Insurance Company ("OSIC") have no duty to defend or indemnify Tilma in an underlying lawsuit that accused Tilma of aiding sex traffickers operating out of a hotel in Chesapeake, Virginia. ECF No. 19. Because the allegations in that underlying lawsuit are covered by the insurance policy between the plaintiffs and Tilma, the Motion to Dismiss (ECF No. 19) will be **GRANTED**, and the plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 39) will be **DENIED**.

**I.   BACKGROUND**

At this stage, the Court assumes that the facts alleged in the Complaint are true. Defendant Jane Doe sued Tilma in an underlying lawsuit that has settled. *Doe (A.M.G.) v. Wyndham Hotels & Resorts, Inc., et al.*, No. 2:24-cv-204 (E.D. Va. Jun. 17, 2025), ECF No. 82. Defendant Doe—the plaintiff in the underlying case—alleged that

she was sex trafficked, that her traffickers used Tilma's hotel as a staging ground for their crimes, and that Tilma turned a blind eye to the trafficking. ECF No. 1 ¶¶ 2–3. As a result, she sought damages through the Trafficking Victims Prevention and Protection Reauthorization Act (TVPRA) of 2022. Now the plaintiffs seek declaratory judgments that they have no duty to defend or indemnify Tilma's alleged actions.[1] *Id.* ¶¶ 56–79. If the Court finds that the insurance policies afford coverage to Tilma, the plaintiffs also ask for a decision that all allegations in the underlying lawsuit constitute only one "occurrence" under the policies. *Id.* ¶¶ 91–93.

After the plaintiffs filed their Complaint, they requested leave to amend it after the deadlines set by the Scheduling Order. ECF No. 39 (Motion for Leave to File Amended Complaint); *see* ECF No. 31 (Scheduling Order). Tilma opposes the proposed amendment. ECF No. 44.

## II. LEGAL STANDARDS

### A. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering such a motion, the

---

[1] The plaintiffs also seek a declaratory judgment that Virginia public policy does not allow for Tilma's acts to be covered by the insurance policies, but that count essentially pleads the same allegations as the duty to defend and indemnify claims. ECF No. 1 ¶¶ 80–90.

2

court "must take all the factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Motion for Leave to File Amended Complaint

"[A]fter the deadlines provided by a scheduling order have passed," a plaintiff seeking to amend a complaint must demonstrate good cause. *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 297 (4th Cir. 2008). "[O]nly diligent efforts to comply with the scheduling order can satisfy [the] good cause standard." *Faulconer v. Centra Health, Inc.*, 808 F. App'x. 148, 152 (4th Cir. 2020) (unpublished). And even if the plaintiff demonstrates good cause to amend its complaint after the scheduling order deadline, the Court must still complete the amendment analysis under Fed. R. Civ. P. 15. *Accord, e.g., Allegis Grp., Inc. v. Bero*, 689 F. Supp. 81, 103 (D. Md. 2023) ("[I]f the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a).") (citation omitted) (alterations accepted).

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of the court or by written consent of the adverse party and that "[t]he court should freely give leave [to amend] when justice so requires." Leave to amend "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citation and quotation marks omitted).[2]

---

[2] The Court assumes without deciding that the plaintiffs have established good cause and filed their proposed amendment in good faith without prejudice to Tilma. Thus, the analysis in Part III.B will only focus on futility.

**III.   ANALYSIS**

    **A.   Motion to Dismiss**

        ***i.   Ripeness***

In its initial briefing, Tilma argued that this suit was not ripe. ECF No. 20 at 11. "Because ripeness is a [c]onstitutional limitation on federal court jurisdiction, ripeness presents the threshold question whether a claim is justiciable." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022). But, in a status conference on July 1, 2025, Tilma acknowledged that the issues in the Complaint are now ripe for adjudication. Given Tilma's concession, the Court will proceed to considering the claims in the Complaint.[3]

        ***ii.   Prudential Concerns***

Tilma also argues that the Court should dismiss the Complaint based on its discretion under the Declaratory Judgment Act out of "prudential concern." ECF No. 20 at 14. But that is not persuasive. Generally, a district court should issue a declaratory judgment "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue[] and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *American Ins. Co. v. Lester*, 214 F.2d 578, 582 (4th Cir. 1954) (citation omitted). Both

---

[3] Even if Tilma had not conceded ripeness, this Court would still find that the original Complaint was ripe. The duty-to-defend issue in the Complaint was ripe when the pleading was originally filed, since the parties were already litigating the underlying lawsuit. And because the two issues turn on interpretation of the same contractual language, resolution of the duty-to-defend question would necessarily result in resolution of the duty-to-indemnify question as well, regardless of whether Tilma had yet incurred an indemnifiable loss.

4

criteria are satisfied in this case. Given the controversy at issue is whether the plaintiffs must pay for Tilma's settlement in the underlying lawsuit, it would be useful for the Court to clarify the plaintiffs' duty through a declaratory judgment. And relieving all parties from the "uncertainty and insecurity of not knowing whether [Tilma] would be provided coverage" is sufficient grounds for a declaratory judgment. *Liberty Mut. Fire Ins. Co. v. Sutton*, No. 21-1277, 2022 WL 11112589, at *2 (4th Cir. Oct. 19, 2022) (unpublished) (quotation marks omitted).

### iii. Failure to State a Claim

#### a. Duties to Defend and Indemnify

Counts I and II, respectively, seek declaratory judgments that the plaintiffs have no duty to defend or indemnify Tilma in the underlying lawsuit. Under Virginia law[4], courts determine whether an insurer has a duty to defend and indemnify an insured solely by comparing the allegations in the insurer's complaint with the text of the insurance policy. *See AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012) (collecting cases). Thus, when an insurer brings an action for a declaratory judgment of no coverage, and the insurance policy provides for coverage under the conditions alleged, the complaint fails to state a claim on which relief can be granted. *Id.*

---

[4] Because this case reached the Court through diversity jurisdiction, the Court applies Virginia law to determine whether the plaintiff met this standard for its state-law claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). In Virginia, the "law of the place where an insurance contract is written and delivered controls issue as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Since these insurance policies were written and delivered in Virginia, ECF No. 1-2 at 3, the Court will use Virginia law to interpret them.

5

The Policy[5] covers liability for the kinds of conduct alleged against Tilma in the underlying suit, and none of the exclusions the plaintiffs plead apply. And contrary to the plaintiffs' contention, Virginia public policy does not bar coverage for Tilma's alleged conduct. Thus, Tilma is entitled to insurance coverage—for both defense and indemnification—and all four counts in the Complaint fail to state a claim on which relief can be granted.

### 1. Coverage Generally

The plaintiffs have a duty to defend and indemnify Tilma in the underlying lawsuit because the Policy unambiguously covers the conduct alleged against Tilma in that case. The Complaint pleads that the underlying lawsuit alleges Tilma "knew or should have known [its participation in the sex trafficking venture] would lead to further violations of 18 U.S.C. § 1591, [the criminal statute that covers sex trafficking], including the trafficking of" Defendant Doe. ECF No. 1 ¶ 30. Coverage B in the Policy encompasses that alleged conduct.[6]

The plaintiffs have a duty to defend and indemnify Tilma in any lawsuit that alleges conduct by Tilma that falls within the scope of the Policy's coverage. *See* ECF No. 1-2 at 13. Coverage B covers "personal and advertising injuries," *id.* at 17, which

---

[5] The plaintiffs issued four policies to Tilma over the course of the period relevant to this suit: a 2011 primary policy (ECF No. 1-2), a 2012 policy (ECF No. 1-3), a 2013 policy (ECF No. 1-4), and a 2014 policy (ECF No. 1-5). The Court will note when differences in policy language are relevant but otherwise will refer to these policies collectively as "the Policy" and cite to the 2011 primary policy.

[6] Because it can decide this Motion by interpreting Coverage B only, the Court assumes without deciding that Coverage A does not apply.

6

include injuries "arising out of . . . [f]alse arrest, detention[,] or imprisonment." *Id.* at 26 (quotation marks omitted).[7] Virginia law defines detainment as "remain[ing] in a certain location, or even in a certain position through the use of force, intimidation, or deception." *Commonwealth v. Herring*, 758 S.E.2d 225, 233–34 (Va. 2014) (citation and quotation marks omitted). And the underlying lawsuit alleges that Tilma knew or should have known that Defendant Doe was being detained. ECF No. 1 ¶ 20 (Tilma's employees "overheard [Defendant Doe] screaming while her trafficker caught her, dragged her back to her hotel room, and beat her following her attempt to escape her trafficker."). Therefore, because the underlying lawsuit alleges detention by force and intimidation, it also alleges a personal and advertising injury covered by the Policy.

### 2. *Exclusions*

The plaintiffs plead that Tilma's alleged conduct falls under exclusions that bar coverage for intentional torts, crimes, and where the insured accepts liability by contract. ECF No. 1 ¶¶ 51–53. For the reasons explained below, none of those exclusions apply in this case.

***Intentional Torts*** — The Policy excludes coverage for "'[p]ersonal and advertising injur[ies]' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" ECF No. 1-2 at 18. However, none of the allegations against

---

[7] Although it seems that half of the Policy's listed injury categories cover "personal injuries" and the other half cover "advertising injuries," all of the categories are insured by the Policy under Coverage B. ECF No. 1-2 at 26.

7

Tilma in the underlying lawsuit fall under this exclusion. While the underlying complaint does allege that Tilma "knew" its participation in the traffickers' activities would harm Defendant Doe, there is no allegation that Tilma "caused" or "direct[ed]" the traffickers' actions or any harm to victims. ECF Nos. 1 ¶ 30; 1-2 at 18. Instead, the underlying complaint alleges that Tilma's *lack of action* or *lack of knowledge* makes it civilly liable. *See* ECF No. 1-1 at 38. Such alleged nonfeasance does not equate to "causing or directing" actions with the knowledge that those actions would violate the rights of Defendant Doe.

The underlying lawsuit alleges that Tilma intentionally *acted* in ways that allowed Defendant Doe's sex trafficking to continue. ECF No. 1-1 at 39 ("Despite having actual or constructive knowledge of widespread and ongoing sex trafficking . . ., [Tilma] continued renting rooms to these traffickers, including the rooms used to sexually exploit victims."), 40 (Tilma "accommodat[ed] specific requests made by traffickers."). But an intentional *tort* is a "tort committed *by* someone acting with general or specific intent." *Intentional tort*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphasis added). And the underlying lawsuit does not allege that Tilma itself sexually trafficked Defendant Doe or directed Defendant Doe's traffickers to commit *their* intentional tort. Even if Tilma created the environment in which Defendant Doe's traffickers operated, Tilma itself did not commit the intentional tort. Therefore, the intentional torts exclusion does not relieve the plaintiffs of their duty to defend or indemnify Tilma in the underlying lawsuit.

8

*Crimes* — The Policy also excludes coverage for "'[p]ersonal and advertising injur[ies]' arising out of a criminal act committed by or at the direction of the insured." ECF No. 1-2 at 18. This exclusion fails for the same reason the last one did. While the underlying lawsuit asserts that Defendant Doe's *traffickers* committed crimes, ECF No. 1 ¶ 2, and that Tilma benefitted from that conduct, *id.* ¶ 3, it does not allege that *Tilma* "committed" or "direct[ed]" the criminal conduct. Instead, the underlying complaint asserts *civil* liability against Tilma because it "knew or should have known about the trafficking." ECF No. 1-1 at 38 (emphasis added). This kind of beneficiary liability is not commission or direction of a crime. *A.D. v. Wyndham Hotels and Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020) (Beneficiary liability covers "those who are not themselves subject to criminal liability but who knowingly benefitted from participation in a venture that they knew *or should have known* was committing an offense under [Section] 1591 of the TVPRA . . . .") (emphasis in original). Therefore, the crime exclusion does not apply.

*Contractual Liability* — Finally, the plaintiffs assert that Tilma's alleged conduct falls under an exclusion that bars coverage for "'[p]ersonal and advertising injur[ies]' for which the insured has assumed liability in a contract or agreement." ECF No. 1-2 at 18. As an initial matter, the Complaint cites no contract or agreement in which Tilma assumed liability for sex trafficking. Additionally, this exclusion fails because of the very next sentence in the Policy: "This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement." *Id.* The allegations in the underlying complaint, if proven, would expose

9

Tilma to liability under federal law—Section 1595(a) of the TVPRA—regardless of any contract. Therefore, the contractual liability exclusion does not apply to this case.

Because Coverage B affords coverage for some of the conduct alleged against Tilma in the underlying lawsuit—and none of the exclusions to Coverage B apply—the Complaint fails to state a claim regarding the duty to defend or the duty to indemnify. Accordingly, Counts I and II will be dismissed.

### c.   *Public Policy*

In Count III, the plaintiffs allege that Virginia public policy prohibits insurance coverage for criminal acts prohibited by the TVPRA, thereby absolving them of any duty to Tilma. ECF No. 1 ¶¶ 80–90. That is an incorrect reading of Virginia law. Virginia courts do prohibit insurance coverage in "cases where the insured acts with *specific intent* to cause harm." *See Atl. Permanent Sav. and Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 839 F.2d 212, 217 (4th Cir. 1988) (emphasis added) (citing *Fedele v. Nat'l Liberty Ins. Co.*, 35 S.E.2d 66 (Va. 1945)). However, beneficiary liability under the TVPRA does not require—and the underlying complaint does not allege—specific intent on the part of a beneficiary. *See, e.g.,* ECF No. 1-1 at 30 ("Despite the mounting evidence . . . [Tilma] continued to earn revenue through engaging in conduct that they knew or should have known would continue to facilitate that trafficking."); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 563 (7th Cir. 2023) (explaining that when Congress drafted Section 1595(a) to allow for beneficiary liability, it specifically did "*not* require proof of the criminal mens rea")

10

(emphasis in original). Accordingly, the underlying lawsuit does not allege specific intent.

Furthermore, "[i]t is not against the public policy of the Commonwealth for any person to purchase insurance providing coverage for punitive damages arising out of the . . . injury of any person as the result of negligence, including willful and wanton negligence, but excluding intentional acts." Va. Code § 38.2-227. Given that the underlying lawsuit alleges negligence by Tilma due to failing to meet a duty of reasonable prudence, *see* ECF No. 1-1 at 38, Virginia public policy permits this insurance coverage.

Therefore, as a matter of law, Virginia public policy does not bar coverage in this case. Count III will be dismissed for failure to state a claim.

### d. One Occurrence

Finally, in Count IV, the plaintiffs ask the Court to find that, to the extent that the Policy affords coverage for the underlying lawsuit, all allegations in that suit constitute one "occurrence" under the Policy. ECF No. 1 ¶ 92. But the underlying complaint does not allege any occurrences, so Count III fails to state a claim.

In the text of the Policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." ECF No. 1-2 at 26. The Virginia Supreme Court has already interpreted identical language in an insurance policy. *See AES*, 725 S.E.2d at 532.[8] It found that,

---

[8] Tilma takes issue with citing *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532 (Va. 2012), because the law "discourages the practice of imputing a legal conclusion

11

in this clause, "[t]he terms 'occurrence' and 'accident' are synonymous." *Id.* at 536 (quotation marks omitted). Therefore, "the dispositive issue in determining whether an accidental injury occurred is . . . whether *the resulting harm* is alleged to have been reasonably anticipated or the natural or probable consequence of the insured's intentional act." *Id.* (emphasis in original). "[A]llegations of negligence," like some allegations in the underlying complaint, "are not synonymous with allegations of an accident." *Id.* at 537. So, if the resulting harm is the probable consequence of the insured's intentional act, it is not an occurrence under the Policy. *Id.* at 536.

Here, the underlying lawsuit does not plead an occurrence. If, as the underlying complaint alleges, Tilma "knew or should have known" that its actions would lead to Defendant Doe continuing to be trafficked, ECF No. 1-1 at 43, then that

---

automatically, without regard to the parties' intent and the facts of the case." ECF No. 28 at 10.

Even if the clause in *AES* were not identical to the Policy's clause, *AES* would still be instructive to the Court. When the Virginia Supreme Court has not explicitly ruled on an issue, it is this Court's job to "predict" how it would rule. *Knibbs v. Momphard*, 30 F.4th 200, 213 (4th Cir. 2022). So, *AES* is, at the very least, helpful for this Court to predict how the Virginia Supreme Court would interpret the Policy here.

harm was the probable consequence of Tilma's actions.[9] Put simply, the underlying complaint does not allege any occurrences. Count IV is moot.[10]

### B. Motion for Leave to File Amended Complaint

Because the Court has already assumed without deciding that the plaintiffs satisfied the good cause, prejudice, and good faith requirements to file their proposed amendment, *supra* n.2, the Court will only analyze the futility of that proposed amendment, ECF No. 39-1.

Courts deny leave to amend for futility when the proposed amendment is "clearly insufficient or frivolous on its face" or "fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021). Three of the original Complaint's claims—Counts I, II, and III—remain in the proposed amendment. ECF No. 39-1 ¶¶ 63–95. Because of that, the Court finds those counts futile as pleaded. The plaintiffs also add two new claims for breach of contract and unjust enrichment. *Id.* ¶¶ 96–113.

---

[9] The Policy allows for "accident[s], *including* continuous or repeated exposure to substantially the same general harmful conditions" to be considered as occurrences. ECF No. 1-2 at 26 (emphasis added). Because the underlying lawsuit alleges that Tilma formed a "continuous business relationship and implicit understanding with the traffickers" that repeatedly exposed Defendant Doe to unlawful trafficking, it pleads continuous exposure to harmful conditions. ECF No. 1-1 at 52–53.

As the Policy defines occurrences as *accidents* first and limits "continuous or repeated exposure" to a *type* of accident, the Court reads the Policy to require that events are considered "accidents" *before* interpreting the second part of the clause. ECF No. 1-2 at 26. That is also how the Virginia Supreme Court interpreted the identical clause in *AES*. 725 S.E.2d at 536.

[10] The plaintiffs' proposed amendment abandons this theory. ECF No. 39-1.

13

### *i.   Count IV: Breach of Contract*

Count IV of the proposed amendment is pleaded to recover money that the plaintiffs paid to defend Tilma in the underlying lawsuit. ECF No. 39-1 ¶ 97. This claim is flawed, though, regardless of whether there is a duty to defend under the Policy. The elements of a breach of contract action under Virginia law are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). If the Court had found that Tilma's alleged conduct was not covered under the Policy, there would be no legally enforceable obligation between the plaintiffs and Tilma. That would mean there was no applicable contract to breach in the first place. Since the Court has found that Tilma's alleged conduct was covered under the Policy, *supra* Part III.A.iii.b, there is a legally enforceable obligation—and no party has breached that obligation. As a result, the Court finds Count IV futile as pleaded.

### *ii.   Count V: Unjust Enrichment*

Count V of the proposed amendment alleges unjust enrichment by Tilma due to the money the plaintiffs paid to defend against the underlying lawsuit. ECF No. 39-1 ¶¶ 105–13. Under Virginia law, unjust enrichment is an "implied contract action based upon the principle that one person . . . may not enrich himself unjustly at the expense of another." *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018) (quotation marks omitted). However, since the Policy does afford coverage to Tilma,

there was no *unjust* enrichment in this case. So the Court finds Count V is also futile as pleaded.

## IV. CONCLUSION

Accordingly, Defendant Tilma, Inc.'s Motion to Dismiss (ECF No. 19) is **GRANTED**. Counts I-IV are **DISMISSED**.

Plaintiffs Peerless Indemnity Insurance Company and Ohio Security Insurance Company's Motion for Leave to File Amended Complaint (ECF No. 39) is **DENIED**.[11]

**IT IS SO ORDERED.**

/s/  
Jamar K. Walker  
United States District Judge

Norfolk, Virginia  
July 22, 2025

---

[11] The plaintiffs also filed a Motion to Continue Trial Date and Extend the Scheduling Order Deadlines. ECF Nos. 41 (Motion), 42 (Opposition). Because the Court denied leave to amend, the Motion is **DENIED AS MOOT**.